# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert A. Mann and Laurinda M. Holm,  **Plaintiffs,**  v.  Nationstar Mortgage, LLC,  **Defendant.** | Civil No. 14-0099 (MJD/JJG)  REPORT AND RECOMMENDATION |

JEANNE J. GRAHAM, United States Magistrate Judge

  This matter is before the undersigned United States Magistrate Judge on Defendant's Motion to Dismiss (ECF No. 3). Plaintiffs Robert A. Mann and Laurinda M. Holm ("Plaintiffs") are suing Defendant Nationstar Mortgage, LLC ("Defendant") to void a foreclosure sale and quiet title in real property. Plaintiffs allege that (1) Defendant failed to strictly comply with Minnesota's foreclosure-by-advertisement statute, Minn. Stat. § 580.02(3), by commencing the foreclosure process before recording the final assignment of mortgage; (2) Defendant did not record the sheriff's certificate of sale within twenty days of the sale, in violation of Minn. Stat. § 580.12; and (3) Defendant did not postpone the foreclosure sale after receiving Plaintiffs' loss mitigation application as required by Minn. Stat. § 582.043, subd. 6(c). Jurisdiction is based on diversity of citizenship.

  Defendant filed a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 16, 2014, and the Honorable Michael J. Davis, Chief United States District Judge, referred the motion to this Court in an Order dated January 27, 2014 (ECF

No. 7). For the reasons set forth below, the Court recommends that the motion be granted in part and denied in part.

I.     **Facts Alleged in the Complaint and Attached Exhibits**

Plaintiffs reside at 3438 39th Avenue South in Minneapolis, Minnesota. (Notice of Removal Ex. A ("Compl.") ¶¶ 1, 2, ECF No. 1-1.) On July 14, 2005, they delivered a promissory note secured by a mortgage to State Bank of Long Lake. (Compl. Ex. A.) The principal amount of the mortgage was $233,900. (*Id.*) Defendant was named as the servicer initially (*id.*), and the mortgage interest was assigned to Defendant on March 29, 2013 (Compl. Ex. D).

On April 16, 2013, Defendant executed a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage ("Notice of Pendency"). (Compl. ¶ 15.) On April 23, 2013, Defendant mailed Plaintiffs a Notice of Mortgage Foreclosure Sale ("Notice of Sale") advising Plaintiffs they were in default and that a sheriff's sale had been scheduled for June 14, 2013. (Compl. ¶ 13 & Ex. A.) The Notice of Sale was also dated April 23, 2013. (Compl. Ex. A.) Defendant recorded both the Notice of Pendency and the final Assignment of Mortgage ("Assignment of Mortgage") on April 25, 2013. (Compl. ¶¶ 6, 16 & Exs. C, D.) The Notice of Sale was published in *Finance & Commerce* on April 26, 2013. (Compl. ¶ 14 & Ex. B.) Based on these events, Plaintiffs claim that Defendant took the "first step" in the foreclosure process before recording the Assignment of Mortgage, in violation of Minn. Stat. § 580.02(3). (Compl. ¶¶ 17, 18.)

After Plaintiffs received notice of the foreclosure sale, they submitted a loss mitigation application to Defendant on October 31, 2013. (Compl. ¶ 27.) Defendant nonetheless proceeded with the sheriff's sale on November 14, 2013. (Compl. ¶ 7.) Plaintiffs contend this violated Minn. Stat. § 582.043, subd. 6(c), which prohibits a servicer from proceeding with a foreclosure

sale if it receives a loss mitigation application after the sale is scheduled but seven days before the scheduled sale date. (Compl. ¶ 26.)

Defendant recorded the sheriff's certificate of sale with the Hennepin County Recorder twenty-six days after the sale date, on December 10, 2013. (*Id.*) Plaintiffs claim this timing violated Minn. Stat. § 580.12, which requires a certificate of sale to be recorded no later than twenty days after the sale. (Compl. ¶¶ 21, 22.)

To remedy the alleged wrongful foreclosure and sale of their residence, Plaintiffs also seek to quiet title under Minn. Stat. § 559.01. (Compl. ¶ 32.)

## II.   Discussion

When considering a motion to dismiss brought pursuant to Rule 12(b)(6), the Court accepts as true the facts alleged in the Complaint and construes all reasonable inferences in the light most favorable to Plaintiffs. *See Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, on a Rule 12(b)(6) motion, a court may not consider matters outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). A court may make exceptions for matters of public record, judicial orders, documents necessarily embraced by the pleadings, and exhibits attached to the pleadings, as long as those documents do not conflict with the complaint. *Id.* (citations omitted). A written exhibit attached "to a pleading is a

part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Here, Plaintiffs attached several exhibits to their Complaint, and the Court has considered them in assessing the viability of Plaintiffs' claims.

In cases founded on diversity jurisdiction and based on Minnesota law, the Court is bound by the decisions of the Minnesota Supreme Court and must try to resolve the issues as that court would. *See Doe v. Baxter Healthcare Corp.*, 380 F.3d 399, 407 (8th Cir. 2004). Statements by the Minnesota Supreme Court and rulings by the Minnesota Court of Appeals are instructive. *See id.*

### A. Plaintiffs' Claim that Defendant Took Steps to Foreclose Before Recording the Assignment of Mortgage

Plaintiffs claim that Defendant failed to comply strictly with Minnesota's foreclosure-by-advertisement statute, Minn. Stat. § 580.02(3), because it took steps to foreclose before recording the Assignment of Mortgage. Specifically, Plaintiffs allege that Defendant scheduled the sheriff's sale, prepared and mailed the Notice of Sale to them, and executed the Notice of Pendency before the Assignment of Mortgage was recorded. Defendant responds that the Assignment of Mortgage was recorded before the Notice of Sale was published, which satisfied the statutory requirement that all mortgage assignments be recorded before the foreclosing party may engage in the foreclosure-by-advertisement process.

Under Minnesota law, there are five "requisites" for foreclosure by advertisement. Minn. Stat. § 580.02. Relevant here, subsection 3 requires "that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded . . . ." Minn. Stat. § 580.02(3). A foreclosing party must strictly comply with the requirements of § 580.02, and if it does not, "the foreclosure proceeding is void." *Jackson v. Mortg. Elec. Regis. Sys., Inc.*, 770 N.W.2d 487, 494 (Minn. 2009) (quotation omitted).

The Minnesota Supreme Court recently explained that "the plain meaning of section 580.02(3) requires all assignments of the mortgage to be recorded before the mortgagee has the right to engage in the process of foreclosure by advertisement." *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 57 (Minn. 2013). The language and context of *Ruiz* indicates that the foreclosure-by-advertisement process begins with the publication of the notice of sale. The *Ruiz* court began its discussion by noting "[a] foreclosure by advertisement proceeding involves the publication and recording of various notices." 829 N.W.2d at 55. The court did not mention that the proceeding also involves actions such as scheduling the sheriff's sale, preparing the notice of sale, or executing the notice of pendency. Clearly, these steps must be taken in foreclosing by advertisement, but they were not listed by the court as part of the foreclosure-by-advertisement process.

The critical dates identified in *Ruiz* were May 14, 2010, when the foreclosing party delivered the final assignment and notice of pendency to the county recording office and May 18, 2010, when the first notice of sale was published and the assignment and notice of pendency were recorded. *Id.* The court did not identify dates such as when the assignment was executed, when the foreclosing party contacted the sheriff to schedule the sale, when the notice of sale was prepared or mailed to the mortgagors, or when the notice of pendency was executed. Rather, the court measured the beginning of the foreclosure-by-advertisement process from the date the notice of sale was published. *Id.* at 58. Because the assignment was recorded "the same day as the first publication of the notice of sale," the assignment "was not recorded before the beginning of the foreclosure proceeding." *Id.*

Plaintiffs focus on a statement made by the *Ruiz* court that the statutory requisites of § 580.02 must be satisfied "*when the first step is taken* in the foreclosure." *Id.* (quoting *Adlinger*

*v. Close*, 201 N.W. 625 (1925)) (emphasis in *Ruiz*). Plaintiffs interpret this statement to mean that no step toward foreclosure, not even scheduling a sale or preparing documents, may be taken until all assignments are recorded. But this interpretation expands *Ruiz* too far. *Ruiz* did not describe the "first steps" in a foreclosure-by-advertisement proceeding, other than as the publication of the notice of sale. Moreover, the *Ruiz* court made clear that its interpretation of § 580.02(3) did not represent a change in the law: "This interpretation of the statute is consistent with our decision in *Adlinger* . . ., in which we interpreted the same statutory language at issue here." *Ruiz*, 829 N.W.2d at 58. And in the almost ninety years since *Adlinger*, no court has relied on the "first step" language to void a foreclosure because the foreclosing party scheduled a sale, prepared or mailed a notice of sale, or executed a notice of pendency before recording the final assignment of mortgage.

Further, defining the "first step" in the foreclosure process as the preparation of documents or scheduling of the sale would result in unpredictability and ambiguity. There would be no definite or consistent beginning to the foreclosure process, and defaulting mortgagors could argue that the process began when foreclosure was initially contemplated. Finally, nothing in *Ruiz*, *Adlinger*, or § 580.02(3) itself indicates that courts should view the "first step" taken in a foreclosure as an event earlier than the publication of the notice of sale.

Other courts in the District of Minnesota have also rejected Plaintiffs' arguments, both before and after *Ruiz*. In *Arzt v. Bank of America, N.A.*, which was decided before *Ruiz*, the plaintiff argued that a foreclosure sale was invalid because an assignment was not recorded before the bank filed the notice of pendency. 883 F. Supp. 2d 792, 795 (D. Minn. 2012) (Doty, J.). The defendants argued in response that the foreclosure proceedings began with the publication of the notice of sale. *Id.* Because chapter 580 did not explicitly define the action that

6

commences a foreclosure by advertisement, the *Arzt* court looked to other statutory authority, specifically Minn. Stat. § 541.03, which also governs foreclosure by advertisement. *Arzt*, 883 F. Supp. 2d at 795 (citing Minn. Stat. § 580.01). Section 541.03 establishes a limitations period for challenges to foreclosures, but also provides that "proceedings to foreclose a real estate mortgage by advertisement shall be deemed commenced on the date of the first publication of the notice." Minn. Stat. § 541.03. Section 580.01's "[r]eference to § 541.03 supports the interpretation that the Notice of Sale is the commencing act." *Arzt*, 883 F. Supp. 2d at 796. The court concluded that foreclosure proceedings were commenced when the notice of sale was published. *Id.* Although *Arzt* was issued prior to *Ruiz*, the cases are not inconsistent, and the Court finds *Arzt* persuasive.

*Edin v. Associated Bank, N.A.*, Civ. No. 13-1856 (SRN/SER), 2013 WL 4494128 (D. Minn. Aug. 21, 2013) (Nelson, J.), was decided after *Ruiz*. The plaintiff in *Edin* made precisely the same argument as Plaintiffs here: that "foreclosure by advertisement proceedings are commenced on—and, thus, all assignments of a mortgage must be recorded by—the date the foreclosing party takes the 'first step' in the foreclosure proceedings." *Edin*, 2013 WL 4494128, at *3. The court followed *Arzt*'s reasoning and determined that "foreclosure by advertisement proceedings are commenced upon publication of a notice of sale." *Id.* (citing *Arzt*, 883 F. Supp. 2d at 796). The *Edin* court acknowledged *Ruiz*'s "first step" language, but noted that *Ruiz* did not define the precise act constituting the first step in a foreclosure. *Id.* at *4. *Edin* concluded that where the assignment and notice of pendency were recorded the day before the notice of sale was first published, the statutory requisites were satisfied. *Id.*

The Court finds here that Defendant engaged in the foreclosure-by-advertisement process when the Notice of Sale was published. The Assignment of Mortgage was recorded on April 25,

7

2013, one day before the publication date. Because the Assignment of Mortgage was recorded before Defendant engaged in the foreclosure-by-advertisement process, Plaintiffs' § 580.02(3) claim should be dismissed.

> B. **Plaintiffs' Claim that Defendant Did Not Record the Certificate of Sale Within Twenty Days of the Sale**

Plaintiffs contend that Defendant did not record the certificate of sale within twenty days of the sheriff's sale, as required by Minn. Stat. § 580.12. This statute provides in relevant part:

> A certificate [of sale] which states a five-week redemption period must be recorded within ten days after the sale; any other certificate must be recorded within 20 days after the sale. When so recorded, upon expiration of the time for redemption, the certificate shall operate as a conveyance to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance.

Minn. Stat. § 580.12. The sale occurred on November 14, 2013, but Defendant did not record the certificate of sale until December 10, 2013. Defendant concedes the certificate of sale was not timely recorded, but argues that (1) Plaintiffs are not within the class whose interests Minn. Stat. § 580.12 was intended to protect, and (2) Minnesota's curative statute, Minn. Stat. § 582.25, validated the foreclosure sale through the passage of time.

> 1. **The Class Whose Interests the Statute Was Designed to Protect**

The Minnesota Supreme Court has indicated generally that the recording requirements of the foreclosure-by-advertisement statutes were intended to benefit mortgagors, as well as other interested parties. Specifically, the Minnesota Supreme Court observed that such recording requirements are not only for the protection of subsequent purchasers, but also "to ensure the mortgagor has notice and the opportunity to redeem." *Jackson*, 770 N.W.2d at 495 (discussing the recording requirements of Minn. Stat. §§ 580.02 and 580.04). In addition, at least one

8

Minnesota state district court has found a foreclosure sale invalid when the certificate of sale was not timely recorded, and granted summary judgment to the mortgagor. *Aaron v. Citizens State Bank of Shakopee*, Court File No. 70-CV-11-2495, slip op. at 4-6 (Minn. Dist. Ct. Apr. 13, 2011) (unpublished).

The statutory language of § 580.12 also signifies an intent to include mortgagors in the class whose interests the statute was enacted to protect. The plain language states that the purchaser at a foreclosure sale receives "all the right, title, and interest of the mortgagor in and to the premises" only after the certificate has been recorded pursuant to the statute and the redemption period has expired. Minn. Stat. § 580.12. Until those statutory conditions are met, the foreclosure process is not complete, and mortgagors retain their rights to ownership, possession, rents, and profits. *Erickson v. Bothwell*, No. A12-2211, 2013 WL 3155455, at *2 (Minn. Ct. App. June 24, 2013) (quoting *Woodmen of World Life Ins. Soc'y v. Sears, Roebuck & Co.*, 200 N.W.2d 181, 184 (1972)). Thus, the Court finds that § 580.12 was intended to protect the rights of mortgagors, as well as others such as junior lienholders and purchasers.

Defendant cites *Holmes v. Crummett*, 13 N.W. 924 (Minn. 1882), and *Badrawi v. Wells Fargo Home Mortgage, Inc.*, 718 F.3d 756 (8th Cir. 2013), for the general proposition that a party who is not the intended beneficiary of a statute cannot assert a claim under it. While the general rule is helpful as a starting point, both *Holmes* and *Badrawi* are distinguishable on their facts. In *Holmes*, the foreclosing party did not serve notice of a foreclosure sale on the mortgagor's tenant who was residing on the premises. 13 N.W. at 924. Otherwise, all requirements for foreclosure were met. *Id.* The mortgagor challenged the foreclosure on the basis that his tenant had not been notified. *Id.* The court held that the statutory requirements "must undoubtedly be observed as to all steps in the proceeding which are calculated to protect the

9

interests of the party whose rights are in question," and any noncompliance that risked prejudicing the mortgagor's rights would render the foreclosure invalid. *Id.* But the mere "omission of some prescribed act which cannot have affected" the mortgagor or was not "prescribed for his benefit" would not invalidate the proceeding. *Id.* Because the mortgagor's rights were not affected and he suffered no prejudice by the failure to give notice to his tenant, the foreclosure was valid. *Id.* In the case at hand, Plaintiffs are not basing their claim on failure to give notice to another. Thus, while instructive, *Holmes*, is not determinative of the issue at hand.

In *Badrawi*, the mortgagor sought to invalidate a foreclosure pursuant to Minn. Stat. § 580.032, subd. 3, because the foreclosing party failed to record a notice of pendency before publishing the foreclosure notice. 718 F.3d at 757. The *Badrawi* court found that § 580.032, subd. 3, was not intended to protect the interests of mortgagors who were in possession of the premises subject to foreclosure, but the interests of others with a redeemable interest in the property, which could be jeopardized if the property was foreclosed without notice to them. *Id.* at 759. The court specifically looked to subdivision 1 of § 580.032, which refers to individuals with "a redeemable interest in real property." *Id.* (quoting Minn. Stat. § 580.032, subd. 1). Based on this language, and the separate statutory requirement for service of a foreclosure notice to the homeowner, the court determined that Badrawi was "not among the class whose interests Minn. Stat. § 580.032, subd. 3 was enacted to protect." *Id.* In the present case, Plaintiffs have not brought suit under § 580.032, subd. 3. Their claim arises under § 580.12, which does not refer expressly to others with a redeemable interest, as § 580.032, subd. 3 does. Thus, like *Holmes*, *Badrawi* is instructive but not binding.

Defendant's third cited authority is *Hudson v. Upper Michigan Land Co.*, 206 N.W. 44, 45 (Minn. 1925). *Hudson* specifically addressed § 580.12's predecessor statute and thus is the most apposite to the case at hand. *Hudson* recognized that "*one* purpose of the statute is to bring notice to those whose interests may be affected by the foreclosure," such as junior lienholders. 206 N.W. at 45 (emphasis added). When foreclosure is by advertisement, the only notice a junior lienholder may receive is by publication, and the junior lienholder will not know when the sheriff's sale has occurred, thereby triggering its right to redemption, until the certificate of sale is recorded. *Id.* at 45-46. Defendant seizes on this language to argue that Plaintiffs, as the mortgagors, were not intended beneficiaries of § 580.12. But *Hudson* did not indicate that junior lienholders were the *only* intended beneficiaries or that mortgagors could not also be intended beneficiaries.

Other statements in *Hudson* are consistent with a finding that § 580.12 was also intended to benefit mortgagors. For example, the court said, "[w]hen a mortgage is foreclosed by advertisement, the foreclosure sale is not complete until the certificate is executed, acknowledged and recorded . . . it is an essential part of the sale." *Id.* at 46. This corresponds with the language of the statute, which provides that the certificate of sale operates as a valid conveyance to the purchaser only "[w]hen so recorded," in other words, within twenty days of the sale. *See* Minn. Stat. § 580.12. There can be little doubt that mortgagors have an interest in verifying that a sale of their property was complete and valid. The *Hudson* court also noted that the Minnesota Legislature had passed several curative acts to validate certificates recorded more than twenty days after the sale, which indicated to the court "that the Legislature doubted the validity of a foreclosure not completed by the record of the certificate as directed by the statute." *Id.* at 45. Assuredly a mortgagor would have an interest in and benefit from a foreclosure

11

declared invalid due to the foreclosing party's failure to properly record the certificate of sale. Finally, *Hudson* remarked, "if the certificate is not recorded, the mortgagee may foreclose again, subject to the right of the mortgagor or owner of the property to adopt the defective and incomplete proceeding as valid and effectual." *Id.* at 46. This statement recognizes not only the possibility of a second foreclosure, which would clearly implicate the rights of the mortgagor, but also the mortgagor's right to adopt the first, defective foreclosure. In sum, Plaintiffs are within the class whose interests § 580.12 was enacted to protect.

### 2. Minnesota's Curative Statute

Defendant next argues that Minnesota's curative statute, Minn. Stat. § 582.25, validated the foreclosure sale through the passage of time. This statute provides:

> Every mortgage foreclosure sale by advertisement in this state under power of sale contained in any mortgage duly executed and recorded in the office of the county recorder or registered with the registrar of titles of the proper county of this state, together with the record of such foreclosure sale, is, after expiration of the period specified in section 582.27, hereby legalized and made valid and effective to all intents and purposes, as against any or all of the following objections:
>  . . .
> (8) that the sheriff's certificate of sale or the accompanying affidavits and return of service were not executed, filed or recorded within 20 days after the date of sale, but have been executed and filed or recorded prior to the last day of the redemption period of the mortgagor, the mortgagor's personal representatives or assigns . . . .

Minn. Stat. § 582.25(8). Minnesota Statute section 582.27, subd. 1(1), governs the application of the curative period:

> Upon expiration of the periods specified in this section, the provisions of section 582.25 apply to a mortgage foreclosure sale subject to this section:
>
> (1) as to all of the provisions of section 582.25, except clauses (2) and (23), one year after the last day of the redemption period of the

>mortgagor, the mortgagor's personal representatives or assigns
>
>. . . .

Minn. Stat. § 582.27, subd. 1(1). Under these statutes, a foreclosure sale by advertisement is valid one year after the redemption period expires, over any objection that the foreclosing party failed to record a certificate of sale within twenty days.

The sale of Plaintiffs' property occurred on November 14, 2013. Neither the redemption period nor the one-year period of time afterward has expired. Thus, § 582.25(8) cannot operate to cure the recording defect.

### C. Plaintiffs' Claim that Defendant Violated Minnesota's Loss Mitigation Statute

The Court turns now to Plaintiffs' claim that Defendant violated Minnesota's loss mitigation statute, Minn. Stat. § 582.043, subd. 6(c), by holding the foreclosure sale despite receiving a timely loss mitigation application. Section 582.043 provides in relevant part: "If the servicer receives a loss mitigation application after the foreclosure sale has been scheduled, but before midnight of the seventh business day prior to the foreclosure sale date, the servicer must halt the foreclosure sale and evaluate the application." Minn. Stat. § 582.043, subd. 6(c).

The Minnesota Legislature established the effective date of subdivision 6 as October 31, 2013, while the effective date for all other subdivisions of § 582.043 was established as August 1, 2013. "Section [582.043] is effective August 1, 2013, for foreclosures with a notice of pendency under Minnesota Statutes, section 580.032, or a lis pendens for a foreclosure under Minnesota Statutes, chapter 581, recorded on or after August 1, 2013, *except that subdivision 6 is effective October 31, 2013*." 2013 Minn. Laws, ch. 115, § 6 (emphasis added).

Defendant argues that Plaintiffs cannot avail themselves of § 582.043 because the Notice of Pendency in this case was recorded before August 1, 2013. Defendant would be correct if

13

Plaintiffs had brought their claim under any subdivision other than subdivision 6. But Plaintiffs' claim arises under subdivision 6, which is expressly excepted from the August 1, 2013, date. *See* 2013 Minn. Laws, ch. 115, § 6 (providing "except that subdivision 6 is effective October 31, 2013."). Defendant's suggestion that the Notice of Pendency had to be recorded on or after August 1, 2013, *and* the loss mitigation application had to be submitted on or after October 31, 2013, is not supported by the use of the word "except." A statutory exception "exempts from [the statute] something that would otherwise be within it." *State v. Goodman*, 288 N.W. 157, 159 (Minn. 1939).

Subdivision 6 became effective October 31, 2013, and Plaintiffs submitted their loss mitigation application on that date. Accordingly, Plaintiffs' § 582.043, subd. 6(c), claim should not be dismissed.

### D. Plaintiffs' Minn. Stat. § 559.01 Claim

Plaintiffs seek to quiet title in their residence pursuant to Minn. Stat. § 559.01. Defendant argues the claim should be dismissed because an action to quiet title is an equitable action and Plaintiffs, having defaulted on their mortgage, come to the Court with unclean hands.

Section 559.01 provides for an action to determine adverse claims to real property: "Any person in possession of real property . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively." Minn. Stat. § 559.01. An action to quiet title is equitable in nature, *Mathews v. Lightner*, 88 N.W.2d 992, 994 (Minn. 1902), and "[a] plaintiff who seeks equity must come into court with clean hands," *Novak v. JP Morgan Chase Bank, N.A.*, Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012) (Doty, J.) (citing *Santee v. Travelers Insurance Co.*, 275 N.W.

366, 368 (Minn. 1937)), *aff'd*, 518 F. App'x 498 (8th Cir. 2013). It is widely-recognized that a mortgagor who has defaulted on his or her loan obligations comes to court with unclean hands and cannot state a claim for relief pursuant to § 559.01. *E.g.*, *Corbett v. Bank of Am., N.A.*, Civ. No. 13-928 (MJD/JSM), 2014 WL 538775, at *9 (D. Minn. Feb. 11, 2014) (Davis, C.J.) (adopting Report & Recommendation of Mayeron, Mag. J.); *Stilp v. HSBC Bank USA, N.A.*, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013) (Montgomery, J.), *aff'd*, 539 F. App'x. 694 (8th Cir. 2013); *Novak*, 2012 WL 3638513, at *4.

Here, the exhibits attached to Plaintiffs' Complaint establish that Plaintiffs defaulted on their mortgage loan by failing to make the required payments. Plaintiffs do not dispute the default, and they continue to live in the residence. Plaintiffs do not argue otherwise, and indeed, they did not even oppose this aspect of Defendant's motion in their memorandum of law or at the hearing. Plaintiffs have come to court with unclean hands and cannot maintain a claim for relief under § 559.01.

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (ECF No. 3) be **GRANTED** as to Plaintiffs' Minn. Stat. §§ 580.02(3) and 559.01 claims, but **DENIED** as to Plaintiffs' claims brought pursuant to Minn. Stat §§ 580.12 and 582.043, subd. 6.

Dated: March 27, 2014

                                         s/ *Jeanne J. Graham*
                                         JEANNE J. GRAHAM
                                         United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **April 11, 2014**. A

party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.